UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JAVONTE DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:22-CV-00451-JRG-DCP |
| ) | |
| TENNESSEE DEPARTMENT OF ) | |
| CORRECTION, MORGAN COUNTY ) | |
| CORRECTIONAL COMPLEX, STACEY ) | |
| OAKS, SGT. TROUT, MRS. B, MIKE ) | |
| PARISH, LISA HELTON, IA FOSTER, ) | |
| CO GOLDIE, and CPL FRAZIER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff, a Tennessee Department of Correction ("TDOC") prisoner housed in the Morgan County Correctional Complex ("MCCX"), has filed a pro se complaint for violation of 42 U.S.C. § 1983 raising claims arising out of incidents during his confinement [Doc. 2], two motions for leave to proceed *in forma pauperis* [Docs. 1, 6], and his inmate trust account documents [Doc. 7]. For the reasons set forth below, Plaintiff's motions for leave to proceed *in forma pauperis* [Docs. 1, 6] will be **GRANTED**, and this action will be **DISMISSED** because the complaint fails to state a claim upon which relief may be granted under § 1983.

I.      FILING FEE

It appears from Plaintiff's relevant filings [Docs. 1, 6, 7] that he is unable to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, Plaintiff's motions for leave to *proceed in forma pauperis* [Docs. 1, 6] will be **GRANTED**.

Plaintiff will be **ASSESSED** the $350.00 civil filing fee. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, United States District Court, 800

Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to his inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six months before the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until Plaintiff has paid the full filing fee of three hundred fifty dollars ($350.00), as authorized under 28 U.S.C. § 1914(a), to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to provide a copy of this memorandum and order to both the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy. This order shall be placed in Plaintiff's file and follow him if he is transferred to another correctional institution.

## II. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive

an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim are insufficient to state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

B. **Complaint Allegations**

On December 16, 2021, Defendants Sgt. Trout and "Couns[elor] Ms[.] B" told Plaintiff that "a couple of inmates" planned to stab him while he was in culinary arts [Doc. 2 at 3–4]. These Defendants then left Plaintiff where certain gates and doors that "w[ere] supposed to be secured" were unlocked [*Id.* at 4]. At 7:40 a.m., four inmates who were confirmed "Gangster Disciple[s]" came into a classroom and approached Plaintiff [*Id.*]. However, Defendant Sgt. Trout came in the classroom "a few seconds" behind these inmates and stated, "since we're all here let's talk about this" [*Id.*]. One of the gang member inmates asked Plaintiff if he wanted to "choose the easy way or hard way" [*Id.*]. Plaintiff responded, "the hard way," and the inmates left [*Id.*]. Defendants Sgt. Trout and Ms. B returned ten minutes later with "Do Not Need PC Papers" that Plaintiff signed [*Id.*]. Plaintiff was then placed in "High Security" on "pending investigation" status [*Id.*].

On December 22, 2021, Plaintiff went to talk to Defendant "IA Foster" and "told him everything," including the location of his property and legal work [*Id.*]. Then, on December 24,

3

2021, Defendant Goldie provided Plaintiff with only his "whites clothing," and Plaintiff did not receive his legal work and the rest of his property, including his family pictures and mail, from Defendant Cpl. Fraizer until January 10, 2022 [*Id.*].

Plaintiff filed a grievance but never heard anything back [*Id.*]. Also, "[t]he Warden, Commissioner, [and] DOJ w[ere] informed[,] but nothing happened," and no one has come to talk to Plaintiff [*Id.*].

Plaintiff has sued TDOC, MCCX, "ATW Stacey Oaks, Sgt[.] Trout, Couns[elor] Ms[.] B, Warden Mike Parish, Commissioner Lisa Helton, [] IA Foster, CO Goldie, [and] Cpl[.] Fraizer" [*Id.* at 1, 3]. As relief, Plaintiff requests that the prison staff members be "held accountable for their actions," five-hundred thousand dollars "for each confirmed member because they could be a potential threat to [Plaintiff] and [his] family," and three-hundred thousand dollars "for [his] mental health [and] pain [and] suffering" [*Id.* at 5].

    **C.    Analysis**

        **i.    ATW Oaks, Warden Parrish, Commissioner Helton, and IA Foster**

First, as set forth above, Plaintiff has named "ATW Stacey Oakes," Warden Parish, Commissioner Helton, and IA Foster as Defendants. But (1) Plaintiff makes no allegation against Defendant Oakes; (2) Plaintiff's only assertions against Warden Parrish and Commissioner Helton are that they were informed of his situation, "but nothing happened," and no one came to speak to him; and (3) as to IA Foster, Plaintiff alleges that he told this Defendant "everything," including the location of his property and legal work, "but nothing happened," and no one came to speak to him, and Plaintiff did not receive his property and legal work until nearly three weeks after this conversation.

4

However, none of these Defendants can be liable under § 1983 based solely on their supervisory positions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2002) (noting that "our precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior").

Moreover, Plaintiff's factual allegations regarding Defendants Warden Parish, Commissioner Helton, and IA Foster do not allow the Court to plausibly infer that any of these Defendants was personally involved in a violation his constitutional rights, such that he may be liable under § 1983. Specifically, Plaintiff's allegations that these Defendants were aware of the incidents alleged in his complaint but did not intervene fails to state a claim upon which relief may be granted under § 1983. *See Grinter v. Knight*, 532 F.2d 567, 576 (6th Cir. 2008) (finding that a prisoner's allegations that internal affairs officers failed to intervene in his allegations of wrongdoing failed to state a claim for violation of § 1983); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under §1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983).

And while Plaintiff also alleges that he told Defendant IA Foster the location of his property and legal work but did not receive those items until nearly three weeks after this conversation, he provides no facts from which the Court can plausibly infer that this Defendant was responsible for this delay, or that this delay rose to the level of a constitutional violation. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which

relief may be granted under § 1983); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (holding that a plaintiff must plead and prove that his meritorious claims have been prejudiced by the alleged denial of access to the courts to state a claim for denial of access to courts (citing *Lewis v. Casey*, 518 U.S. 343 (1996)).

Thus, the complaint fails to state a claim upon which relief may be granted under § 1983 as to these Defendants.

### ii. TDOC and MCCX

Also, Plaintiff's claim(s) against the TDOC are actually against the State of Tennessee. *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding that the TDOC is equivalent of the "State"). However, "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Hix*, 196 F. App'x at 355 (holding that the TDOC is not a "person" within meaning of 1983). Therefore, the TDOC is not an entity subject to liability under § 1983.

Similarly, the MCCX is a building, not a person subject to suit under § 1983. *Bostic v. Tennessee Dep't of Corr.*, No. 3:18-cv-562, 2018 WL 3539466, at *7 (M.D. Tenn. July 23, 2018) (holding that a correctional complex is not a "person" or legal entity that can be sued under § 1983, and noting that a suit against the facility is actually a suit against TDOC itself).

Accordingly, Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983 against both the TDOC and the MCCX.

### iii. Cpl. Trout and Ms. B

Liberally construing the complaint in Plaintiff's favor, he appears to allege that Defendants Cpl. Trout and Ms. B failed to protect him from a risk of harm posed by gang member inmates who intended to stab him. It is well-settled that prison officials have a duty to protect inmates

6

from violence by other inmates and to take reasonable measures to protect their safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Liability attaches to a prison official's failure to protect an inmate only where the inmate demonstrates that he was "incarcerated under conditions posing a substantial risk of serious harm," and the prison official acted with deliberate indifference to the inmate's safety. *Id*. at 834. "Deliberate indifference" means that a prison official is liable only where he knows that the inmate faces a substantial risk of serious harm and disregards the risk. *Id*. at 837 (quotation marks omitted).

As set forth above, while Plaintiff alleges that Defendants Cpl. Trout and Ms. B left certain doors and/or gates open that should have been secured after telling Plaintiff that certain inmates wanted to stab him, he also asserts that "a few seconds" after the gang member inmates who posed a threat to him entered the classroom where he was located, Defendant Cpl. Trout also entered that classroom. Thus, Plaintiff has not set forth facts from which the Court can plausibly infer that Defendant Cpl. Trout or Defendant Ms. B was deliberately indifferent to his safety based on this incident. To the contrary, Plaintiff's complaint suggests that, due to the threat of violence against Plaintiff, Defendant Cpl. Trout reasonably decided to guard Plaintiff's location and/or the threatening gang members' locations in a manner calculated to prevent any violence toward Plaintiff, and this strategy was successful. "[P]rison officials who act reasonably" in the face of a risk of danger to a prisoner do not violate the Eighth Amendment. *Farmer*, 511 U.S. at 845.

And while Plaintiff also alleges that, after the incident in the culinary arts classroom with the gang member inmates, Defendants Sgt. Trout and Ms. B brought him "Do Not Need PC Papers" that he signed, he does not provide any facts from which the Court could plausibly infer that this amounted to deliberate indifference to his safety, especially as he also asserts that he was

7

Case 3:22-cv-00451-JRG-DCP   Document 8   Filed 03/07/23   Page 7 of 9   PageID #: 58

then placed in "High Security" on "pending investigation" status and does not set forth any facts indicating that these Defendants disregarded any further threat of harm after this incident.

Accordingly, the complaint fails to state a claim upon which relief may be granted under § 1983 as to these Defendants.

### iv. CO Goldie and Cpl. Frazier

As set forth above, Plaintiff also alleges that after he was placed in "High Security" on December 16, 2021, Defendant CO Goldie provided him only with his "whites clothing" on December 24, 2021, and Defendant Frazier did not provide him with his property and legal work until January 10, 2022. However, even liberally construing these allegations in Plaintiff's favor, Plaintiff does not provide any facts about these incidents from which the Court can plausibly infer that either of these Defendants was responsible for the alleged delays in providing Plaintiff with these items, or that these delays rose to the level of a constitutional violation. Thus, Plaintiff has failed to "nudge[] [his claims] across the line from conceivable to plausible" as to these Defendants. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motions for leave to proceed *in forma pauperis* [Docs. 1, 6] will be **GRANTED**;

2. Plaintiff will be **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk will be **DIRECTED** to provide a copy of this memorandum and order to both the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Even liberally construing the amended complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

8

6. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

ENTER:

                                       s/J. RONNIE GREER
                                 UNITED STATES DISTRICT JUDGE